Timothy J. **ROGERS,** Plaintiff–Appellant,

v.

The **BOARD OF EDUCATION OF the BUENA VISTA SCHOOLS; The Buena Vista Education Association; and The Michigan Education Association,** Defendants–Appellees.

No. 92–1365.

United States Court of Appeals, Sixth Circuit.

Argued March 27, 1993.

Decided Aug. 6, 1993.

---

Thomas H. Fancher (argued and briefed), Van Benschoten, Hurlburt, Tsiros & Allweil, Saginaw, MI, for Timothy J. Rogers.

Henry G. Marsh (argued and briefed), Marsh & Marsh, Saginaw, MI, for Buena Vista Schools Bd. of Educ.

Thomas A. Baird (argued and briefed), Okemos, MI, for Buena Vista Educ. Ass'n and Michigan Educ. Ass'n.

Before: KEITH and SUHRHEINRICH, Circuit Judges, and LIVELY, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

In this Michigan labor and employment discrimination case, plaintiff Timothy J. Rogers challenges the district court order dismissing his complaint for failure to exhaust his internal union remedies. For the following reasons, we **AFFIRM** in part, and **REVERSE** in part.

## I.

Plaintiff, a black male, is a tenured teacher of defendant Buena Vista School District (the school). Defendant Buena Vista Education Association (BVEA) is the collective bargaining representative of the school's teachers, and is the local affiliate of defendant Michigan Education Association (MEA).

In March 1990, the school notified plaintiff that he would be laid off for the 1990–1991 school year. Several other teachers were recalled or transferred that summer. Gary Ursuy, who had been laid off since 1985, was recalled as a seventh grade teacher. James Sanders was transferred from his position as an elementary school teacher to a position as a seventh grade teacher. Jean Altrop, who was laid off with plaintiff, was recalled as a sixth grade teacher. Shortly before the school year started, Sanders and Altrop switched positions. Plaintiff was not recalled.

Plaintiff contended that he was qualified for the sixth and seventh grade teaching positions, and was entitled to recall first. He also believed that the switch involving Sanders and Altrop was designed by the school to bypass plaintiff in the recall process. Plaintiff brought his concerns to the attention of the school, which responded that the recalls were properly based on seniority and teacher certification, and that the switch between Altrop and Sanders was done at their behest, not the school's. Dissatisfied with this response, plaintiff filed a grievance with the BVEA, asserting that article X of the collective bargaining agreement (CBA) between the school and the BVEA requires that the last teacher laid off be the first teacher recalled, and that he should have been recalled before Ursuy or Altrop because he was laid off after they were. The school maintained that article X, taken as a whole, provides for recall based on seniority and certification, and that the recalls were proper. The BVEA decided not to pursue the grievance. Plaintiff did not appeal this decision to the MEA.

On September 23, 1991, plaintiff filed the instant diversity action seeking money damages against the school, the BVEA, and the MEA.[1] Count one alleged that the school had breached the CBA by not recalling plaintiff and that the BVEA and MEA had breached their duty of fair representation by not pursuing his grievance. Count two alleged that the school had violated Michigan's Elliott–Larsen Civil Rights Act, Mich.Comp. Laws Ann. §§ 37.2101–.2804 (1985 & Supp. 1993) by discriminating against plaintiff based on his race.

The school filed a motion to dismiss and for summary judgment, contending that plaintiff had failed to exhaust his administrative remedies under the Michigan Teachers Tenure Act, Mich.Comp.Laws Ann. §§ 38.71–.191 (1985 & Supp.1993), and that he had simply alleged no claim. The BVEA and MEA also moved for dismissal arguing plaintiff had failed to exhaust his internal union and administrative remedies, and for summary judgment. On February 10, 1992, the district court dismissed plaintiff's case without prejudice stating:

> The failure to exhaust concept, in this Court's judgment, bars suit against both the union and the [school].

Accordingly, the Court will dismiss the plaintiff's breach of contract claim and the duty of fair representation claim. And because the Elliot[t] Larsen claim arises out of exactly the same facts, depends on the allegation of the constructive discharge and has additional underpinnings of racial animus claims, the Court's determination is, in any event, judicial resources would be

---

1. Plaintiff is presently a resident of Maryland. Defendants are residents of Michigan.

most economically and effectively used by dismissing that claim as well.

Plaintiff now timely appeals.

## II.

### A.

Plaintiff first argues that the district court erred in dismissing count one of his complaint for failure to exhaust his union remedies. Count one is based on Michigan's Public Employees Relations Act (PERA), Mich. Comp.Laws Ann. §§ 423.201–.216 (1978 & Supp.1993), which is modeled after the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169 (1988). *See Demings v. Ecorse*, 423 Mich. 49, 56–64, 377 N.W.2d 275 (1985); *Goolsby v. Detroit*, 419 Mich. 651, 660 n. 5, 358 N.W.2d 856 (1984). In construing and applying PERA, the Michigan Supreme Court has held that the Michigan legislature intended Michigan courts to rely on analogous federal precedent. *Rockwell v. Crestwood School Dist. Bd. of Educ.*, 393 Mich. 616, 635–36, 227 N.W.2d 736 (1975), *appeal dismissed*, 427 U.S. 901, 96 S.Ct. 3184, 49 L.Ed.2d 1195 (1976); *Michigan Employment Relations Comm'n v. Detroit Symphony Orchestra, Inc.*, 393 Mich. 116, 127, 223 N.W.2d 283 (1974); *Detroit Police Officers Ass'n v. Detroit*, 391 Mich. 44, 53, 214 N.W.2d 803 (1974); *Michigan Employment Relations Comm'n v. Reeths–Puffer School Dist.*, 391 Mich. 253, 260, 215 N.W.2d 672 (1974). In addition to Michigan case law concerning the duty to exhaust internal union remedies, the parties and we therefore rely on analogous federal labor cases.

■ Exhaustion of internal union remedies is generally required before a union member can sue his employer for breach of a collective bargaining agreement or his union for breach of the duty of fair representation. *Clayton v. International Union, UAW*, 451 U.S. 679, 692–96, 101 S.Ct. 2088, 2096–99, 68 L.Ed.2d 538 (1981) (requiring union members to exhaust internal union remedies before bringing suit for breach of CBA and of the duty of fair representation if the remedies can either reactivate the grievance or provide complete relief); *Mayo v. Great Lakes Greyhound Lines*, 333 Mich. 205, 214, 52 N.W.2d 665 (1952) (where union members are required by union constitution and by-laws to pursue all internal procedures before resorting to court action, trial court has no jurisdiction until such procedures are exhausted). Failure to exhaust may nevertheless be excused in certain circumstances. In *Clayton*, the Supreme Court stated that:

> [C]ourts have discretion to decide whether to require exhaustion of internal union procedures. In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . .; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095.

Here, article IV of the MEA's bylaws provides that:

> Any person or persons shall be obliged to exhaust all procedures and remedies provided for in the Constitution and these Bylaws before resorting to any court, tribunal or agency for purposes of asserting a claim against the Association. . . .

Article X of the MEA Constitution further provides that "[t]he Executive Committee shall have original jurisdiction over . . . alleged violations of the duty of fair representation." Plaintiff admits that he did not bring his claim to the Executive Committee, but argues that he should not be required to do so.

■ Plaintiff first contends that appeal to the Executive Committee would be futile because the MEA has agreed with the school's and BVEA's construction of the CBA. We disagree. The Executive Committee of the MEA and BVEA are made up of different people, and might well adopt different positions. *See Monroe v. International Union, UAW*, 723 F.2d 22, 25 (6th Cir.1983) (hostility on part of local union does not necessarily show hostility on part of international union). Although MEA representative Willie Matthews apparently recommended that the

BVEA not pursue plaintiff's grievance, plaintiff made no showing that the Executive Committee controls Matthews or concurs in his opinion.

Plaintiff points out that both the BVEA and the MEA now oppose his interpretation of the CBA in this litigation, and argues that this shows their hostility to his position. Plaintiff fails, however, to acknowledge that he has forced the unions to defend themselves in court, without first giving them an opportunity to resolve the controversy internally—the very purpose of requiring exhaustion. *See Clayton,* 451 U.S. at 687, 101 S.Ct. at 2094 (exhaustion "encourages private rather than judicial resolution of disputes arising over the interpretation of collective bargaining agreements"). The unions' present position does not necessarily reveal what position they will take if given the opportunity to resolve this controversy internally; thus, it does not prove hostility.

██ Plaintiff next contends that even if the Executive Committee is not hostile, it could not give him the relief he now seeks or reactivate his grievance. We again disagree. Although plaintiff's grievance cannot be reactivated, his complaint asks for money damages, which the MEA emphatically insists it could still award. Plaintiff challenges the MEA's stance as unsupported by the MEA Constitution; however, the district court found the language of article X of the MEA Constitution broad enough to support the MEA's contention that it gives the Executive Committee plenary power to remedy grievances, including the power to award money damages as sought by plaintiff. We agree with the district court's conclusion regarding the scope of the Executive Committee's power. Under *Clayton,* internal union remedies need only reinstate the grievance *or* provide complete relief, not both, *see Wagner v. General Dynamics,* 905 F.2d 126, 128 (6th Cir.

1990); therefore, the remedy available from the Executive Committee is sufficient to require exhaustion.

██ Plaintiff argues finally that he should not be required to exhaust because he did not know of his remedies under the MEA Constitution and by-laws. Plaintiff also maintains that Matthews told him that his only remedy was the present lawsuit, and that this misrepresentation excuses his failure to exhaust also. We reject both contentions. The MEA Constitution is a written document, which plaintiff should have reviewed to ascertain his rights under it. Simple ignorance is no excuse for failure to exhaust. *See Monroe,* 723 F.2d at 25–26 (imposing duty on union members to determine efficacy of union remedies). *See also Jarrel v. BOMAG,* 728 F.Supp. 468, 476 (S.D.Ohio 1989) (ignorance of remedies is not an excuse for failure to exhaust); *Rutushin v. General Motors Corp.,* 575 F.Supp. 986, 990 (N.D.Ohio 1983) (ignorance no excuse), *aff'd,* 755 F.2d 933 (6th Cir.1985) (table). As to the alleged misrepresentation, we have held that "the opinion of a union representative cannot be construed as a waiver of [a union's] constitutional appeal requirements." *Ryan v. General Motors Corp.,* 929 F.2d 1105, 1110 (6th Cir.1989) (citations omitted). Thus, Matthews' statement in his capacity as a union representative is not sufficient to waive the MEA's exhaustion requirement.

For the foregoing reasons, we hold that the district court properly dismissed count one of plaintiff's complaint for failure to exhaust his internal union remedies.[2]

### B.

██ Plaintiff also contends that the district court incorrectly dismissed count two, his Elliott–Larsen claim. We agree. The basis for the dismissal of count two is not clear, but it cannot be sustained under any

---

**2.** In addition to failing to exhaust his union remedies, plaintiff also failed to exhaust his administrative remedies under Michigan's Teachers Tenure Act, Mich.Comp.Laws Ann. §§ 38.71–.191 (1985 & Supp.1993). As against the school, count one is tantamount to a claim of wrongful discharge through the use of the lay-off as a "subterfuge," a claim cognizable under the Act. *See Freiberg v. Board of Educ.,* 61 Mich.App. 404, 414, 232 N.W.2d 718 (1975). Under the Act, a teacher must exhaust his administrative remedies before pursuing a court action. *See Elgammal v. Macomb County Intermediate School Dist. Bd. of Educ.,* 83 Mich.App. 444, 449, 268 N.W.2d 679 (1978); *Bennett v. School Dist.,* 10 Mich.App. 265, 269, 159 N.W.2d 245 (1968). Plaintiff's failure to do so is an additional reason for the dismissal of count one.

rationale. First, plaintiffs need not exhaust their administrative remedies under the Elliott–Larsen Civil Rights Act before bringing suit for unlawful discrimination. *See Mollett v. Taylor,* 197 Mich.App. 328, 342, 494 N.W.2d 832 (1992); *DeMara v. Governor,* 183 Mich.App. 87, 92, 454 N.W.2d 401 (1990); *Walters v. Department of Treasury,* 148 Mich.App. 809, 815–16, 385 N.W.2d 695, *appeal denied,* 425 Mich. 873 (1986); *Marsh v. Department of Civil Serv.,* 142 Mich.App. 557, 562–63, 370 N.W.2d 613 (1985), *appeal denied,* 424 Mich. 881 (1986). Additionally, plaintiff's failure to exhaust his internal union remedies had no effect on the Elliott–Larsen claim, as those remedies could not cure racial discrimination occasioned by the school. There was also no basis for dismissing count two simply because it is based on the same facts as count one. Even if factual similarity could justify the dismissal, count two involves allegations of racial animus which are not part of count one. Thus, the court erred in dismissing count two.

### III.

For the foregoing reasons, we **REVERSE** the district court's decision to dismiss plaintiff's Elliott–Larsen claim. In all other regards, we **AFFIRM.**