# STATE OF MICHIGAN

# COURT OF APPEALS

MJ DEVELOPMENT COMPANY, INC.,

        Plaintiff-Appellant,

v

INN AT BAY HARBOR ASSOCIATION,

        Defendant-Appellee,

and

LORI JODAR, JANE HOURANI, and JEANENE
CALABRESE,

        Defendants.

UNPUBLISHED
February 23, 2017

No. 330496
Emmet Circuit Court
LC No. 15-104943-CZ

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

In this breach of contract action, plaintiff appeals the order of the trial court that granted defendants' motion for summary disposition. Plaintiff challenged management decisions made by appellee, the Inn at Bay Harbor Association (defendant Association). The Inn at Bay Harbor (the Inn) is a condominium project located in northwest Michigan.[1] We affirm.

Plaintiff's breach of contract claim is predicated on actions taken by defendant Association with respect to work done on gutters and downspouts, installation of a gas fireplace, and the handling of a special assessment for the addition of a service elevator. Plaintiff argues that in each of these circumstances, defendant Association violated the terms of its bylaws. As to the question of whether such bylaws constitute a contract, this Court has made the following relevant observations:

---

[1] Previously, the trial court granted defendants' motion for summary disposition on plaintiff's claims brought under MCL 450.2489 (illegal or fraudulent acts by person in control of corporation, MCL 600.3605 (compel accounting), and MCR 2.605 (declaratory judgment). However, that ruling and those claims are not at issue on appeal.

When validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members. See *Mayo v Great Lakes Greyhound Lines*, 333 Mich 205, 214; 52 NW2d 665 (1952) (providing that the members of a voluntary association are bound by the association's constitution and general laws); *Kauffman v The Chicago Corp*, 187 Mich App 284, 287; 466 NW2d 726 (1991) (stating that the constitutions, rules, and bylaws of the entity at issue "constitute[d] a contract by all members" of the entity "with each other and with the [entity] itself"); *Allied Supermarkets, Inc v Grocer's Dairy Co*, 45 Mich App 310, 315; 206 NW2d 490 (1973) ("The bylaws of a corporation, so long as adopted in conformity with state law, constitute a binding contract between the corporation and its shareholders."). In this case, the parties do not dispute that the [defendant Association] had the authority to adopt bylaws and that the bylaws were adopted by a majority of the Association's members. Thus, to the extent that they do not conflict with the Association's articles of incorporation or this state's law, the bylaws would constitute a binding contractual agreement between the Association and its various members. [*Colin v Upton*, 313 Mich App 243, 255; 881 NW2d 511 (2015).]

Because there is no dispute about the validity of the bylaws, they constitute a binding contract.

Defendants brought their motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). Although the court did not indicate which subrule it relied on in granting summary disposition, because it looked beyond the pleadings, we treat it as having been granted under MCR 2.116(C)(10). *Krass v Tri-County Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999). The standard of review for challenges to a trial court's granting of summary disposition under MCR 2.116(C)(10) is de novo, *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012), as are issues of contract interpretation, *AFT Mich v Michigan*, 497 Mich 197, 208; 866 NW2d 782 (2015).

A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). To succeed under MCR 2.116(C)(10), the moving party must first "specifically identify the issues as to which [it] believes there is no genuine issue as to any material fact," MCR 2.116(G)(4), and must support its position with "affidavits, depositions, admissions, or other documentary evidence," MCR 2.116(G)(3)(b). All factual disputes must be resolved in favor of the nonmoving party. *Foreman v Foreman*, 266 Mich App 132, 135-136; 701 NW2d 167 (2005). The motion is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008).

## I. BUSINESS JUDGMENT RULE

At various times, the trial court relied, either implicitly or explicitly, on the business judgment rule. The applicability of the business judgment rule to decisions made by condominium association boards is discussed in 15B Am Jur 2d, Condominiums, § 23:

Ordinarily, the decisions made by a condominium association board should be reviewed by a court using the same business judgment rule that governs decisions made by other types of corporate directors. The business judgment rule limits the judicial review of decisions made by a condominium's board of managers to *whether the board's actions are authorized*, and whether the actions were taken in good faith and in furtherance of the legitimate interests of the condominium. It can be gleaned from the case law that so long as a condominium board acts for the purposes of the condominium, *within the scope of its authority* and in good faith, the courts will not substitute their judgment for that of the board's. [*Id.* at p 591 (emphasis added; citations omitted).]

In this case, plaintiff alleges that defendant Association breached the bylaws by acting outside its authority when it added a fireplace to the facility that cost over $10,000 without getting approval via a special assessment. If true, the business judgment rule would not shield defendant Association. *Id.*; see also 9 ALR7th, Art 5 (stating that deference is afforded to an association under the business judgment rule so long as the association's acts are *authorized*). Thus, to the extent that the trial court implied that the business judgment rule insulated the Association board's decision on what constitutes a replacement as opposed to an addition, the trial court erred. When the underlying facts are not disputed, whether the Association exceeded its authority is a matter law to be decided by the courts. However, for the reasons provided below, any error is harmless, as the trial court ultimately found that the defendant Association's actions were authorized, and we agree.

## II. ACTIONS OF DEFENDANT ASSOCIATION

Article II of the Inn's bylaws provide as follows:

Section 2. <u>Determination of Assessments</u>. Assessments shall be determined in accordance with the following provisions:

(a) <u>Budget: Regular Assessments</u>. . . . Should the Association at any time decide, in its sole discretion: (1) that the assessments levied are or may prove to be insufficient (a) to pay the costs of operation and management of the Condominium, (b) to provide replacements of existing Common Elements, (c) to provide additions to the Common Elements not exceeding $10,000 annually for the entire Condominium Project, or (2) that an emergency exists, the Association shall have the authority to increase the general assessment . . . .

(b) <u>Special Assessments</u>. Special assessments, in addition to those required in subparagraph (a) above, may be made by the Association from time to time and approved by the Co-owners as hereinafter provided to meet other requirements of the Association, including, but not limited to: (1) assessments for additions to the Common Elements of a cost exceeding $10,000 for the entire Condominium Project per year.

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v Chrysler Corp*, 445 Mich 109, 127 n 28; 517 NW2d 19 (1994).

"[T]he intent of the contracting parties is best discerned by the language actually used in the contract." *Rory v Continental Ins Co*, 473 Mich 457, 469 n 21; 703 NW2d 23 (2005). "Unless otherwise defined, contractual language is given its plain and ordinary meaning." *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 53; 723 NW2d 922 (2006).

## A. FIREPLACE

At issue is whether the defendant Association's construction of a new fireplace in its lobby is an "addition" or a "replacement" under the bylaws. If the fireplace is a replacement, then the Association was within its power to authorize the associated expenses, regardless of the amount. On the other hand, if the fireplace is an addition, whose costs exceeds $10,000, then the Association was required to obtain the co-owners' approval. The bylaws, however, do not define the terms "addition" or "replacement." As such, resort to a dictionary is appropriate. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 515; 773 NW2d 758 (2009).

*Random House Webster's College Dictionary* (2d ed) defines "replacement" as "**1.** the act of replacing. **2.** a person or thing that replaces another. . . . ." In turn, "replace" is defined as "**1.** to assume the function of; substitute for: *to replace gas lights with electric lights.* **2.** to provide a substitute for: *to replace a broken dish.*" *Id.* "Addition" is defined, in relevant part, as "something added" and, alternatively, "a wing, room, etc., added to a building." *Id.*

Here, the "old" fireplace was an electric fireplace that did not provide for an open fire and was attached to the wall. The "new" fireplace that was installed consists of a framed opening in a chimney that is designed to hold an open fire. While the functionality of the two units is different, this fact is not controlling. As common sense dictates, replacements do not have to be of the same specific character. Indeed, the dictionary example illustrates that one can "replace gas lights with electric lights." Here, the replacement is the converse: an electric fireplace being replaced with a gas fireplace. Thus, we hold that the new fireplace was a replacement under the bylaws. Clearly, the new fireplace "assume[d] the function" and was a "substitute for" the prior fireplace. Therefore, according to the plain terms of the bylaws, the defendant Association was authorized to fund and replace the old fireplace, though the cost exceeded $10,000.

We note that if the drafters of the bylaws desired to ensure more stringent requirements for what constitutes a "replacement," such as not exceeding the value of the thing being replaced, then the drafters could have used such language. We decline to read any such limits into the text's language. And, indeed, if the co-owners want to more tightly define what constitutes a replacement, then they can amend the bylaws. But under the bylaws at issue, the board was authorized to make any and all replacements without obtaining any approval from the co-owners, and the new fireplace undoubtedly took the place of—or replaced—the old fireplace.

## B. GUTTERS AND DOWNSPOUTS

Plaintiff also argues that the work done on the gutters and downspouts violated the bylaws regarding additions to the building. Plaintiff claims that the work cost in excess of $38,000 and that the work cannot be categorized as a "replacement."

The bylaws specifically state, "An adequate reserve fund for maintenance, repairs and replacement of those Common Elements that must be replaced on a periodic basis shall be established in the budget and must be funded by regular payments as set forth in Section 2(c) below rather than by special assessments." Thus, the defendant Association is required to use general funding, as opposed to special assessment for all of the following: (1) maintenance, (2) repairs, and (3) replacement of "Common Elements that must be replaced on a periodic basis."

The applicable definition of "maintenance" is "the upkeep of property or equipment." *Merriam Webster's Collegiate Dictionary* (11th ed). And "upkeep" is defined as "the act of maintaining in good condition." *Id.* Here, it is clear that gutters and downspouts relate to the "upkeep of property," as they serve the vital role of diverting rain water away from buildings and structures, which acts to keep the property "in good condition." Therefore, because the gutters and downspouts are considered maintenance of the common elements under the bylaws, the Association's actions pertaining to the gutters and downspouts are authorized.

## C. SERVICE ELEVATOR

Plaintiff argues that defendant Association breached the bylaws in its handling of the service elevator special assessment. Specifically, plaintiff argues that the bylaws were breached because the 2015 budget included the special assessment for the elevator prior to the co-owner's vote. Plaintiff claims that it is immaterial that after the co-owners voted "no" on the special assessment, the project did not advance because the members were assessed for the cost of installing an elevator nonetheless.

The bylaws provide, "The Association *shall establish* an annual budget in advance for each fiscal year and such budget *shall project all expenses* for the forthcoming year which *may be required for the proper operation*, management and maintenance of the Condominium Project, including a reasonable allowance for contingencies and reserves." (Emphasis added.) Thus, because the board determined that an additional elevator was a high priority item for the 2015 year, the bylaws required that the expense of the elevator project should be projected in the that annual budget.

A little over one month after the co-owners were informed of the projected budget, they were sent a letter explaining why the service elevator was needed. Defendants asked the co-owners to approve the completion of the service elevator, with its estimated cost of $140,000. Defendants also stated, "In anticipation of your support, the portion of the cost for this project to be paid by the HOA has been budgeted for 2015. **No additional funding will be necessary**." When the special assessment failed, the money that was allocated for the elevator project was simply used for other *authorized* projects. Thus, defendants were in compliance with Article II of the bylaws because no monies were spent on constructing an elevator after the special assessment failed. Accordingly, because the bylaws were complied with, the Association did not breach the contract.

Affirmed. Defendant Association, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan