**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0214n.06

Case No. 16-1632

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Apr 12, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EARLINE YOUNG, et al., | ) | |
| | ) | |
|     Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| INTERNATIONAL UNION UNITED | ) | MICHIGAN |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA, LOCAL 651; | ) | |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA; GENERAL | ) | |
| MOTORS, LLC, | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

BEFORE: GIBBONS, COOK, and KETHLEDGE, Circuit Judges.

COOK, Circuit Judge. Appellants are forty-five General Motors ("GM") employees who previously worked for Delphi, GM's largest automotive-parts supplier, at Delphi's Flint-East plant. In 2009, GM hired all these forty-five in a workforce transfer between the two companies. A few years later, these same employees sued GM and their union, United Automobile Workers ("UAW"), alleging that GM paid them an improper wage and that the union breached its duty of

fair representation during the grievance process. The district court dismissed their complaint and denied leave to amend. We affirm.

## I.

Delphi operated as GM's subsidiary until 1999, when Delphi spun-off as an independent company. Over the next several years, the UAW, Delphi, and GM negotiated several agreements that form the basis of the claims on appeal.

**(A) The Relevant 2004 and 2007 Agreements**

Facing financial stress in the early 2000s, Delphi aimed to slash its labor costs through a 2004 Supplemental Agreement with the UAW. The agreement established a two-tier wage structure at Delphi: employees hired before its May 3, 2004 effective date continued to receive a Tier-I wage; employees hired after that date would receive a lower Tier-II wage, the difference being about $8 per hour.

The Supplemental Agreement proved only a partial salve for Delphi's financial woes, and in 2005 Delphi filed for Chapter 11 bankruptcy protection. As part of Delphi's reorganization, it signed a 2007 Restructuring Agreement with GM and the UAW to usher in a "more competitive wage and benefit level[]." To that end, the 2007 Restructuring Agreement offered three options to Delphi employees receiving Tier-I wages: (1) early retirement; (2) a one-time buy-out; or (3) a "buy-down" to Tier-II wages in exchange for $105,000 paid in three annual $35,000 installments. Thirty-nine of the employees who bring this claim began working at Delphi in 2005 or 2006, after the Supplemental Agreement's effective date, and therefore already received the lower Tier-II wage. The six who had been receiving Tier-I wages elected to buy-down to the Tier-II wage rate.

The 2007 Restructuring Agreement also included a provision that singled out the Flint-East Delphi plant—where all the Appellants worked—for special treatment. First, GM agreed to hire 230 Flint-East employees beginning January 2008. Second, GM committed to finding a third party to hire all of the remaining Flint-East employees by December 2008, and if one could not be found, to implementing "a solution such that these [employees] will no longer remain as Delphi employees."

**(B) The Employees' Transfer to GM**

When GM could not find a third-party employer to hire most of the Flint-East employees by the end of 2008, it agreed to hire those employees itself, including all the employees who bring this appeal. In a 2009 Memorandum of Understanding (the "2009 MOU"), the UAW and GM agreed that the transferred employees would be "assigned March 17, 2008 as their General Motors Corporate Seniority Date." The agreement made an exception, however, for Delphi employees hired before October 18, 1999, who would "retain their Delphi Corporate Seniority Date as their General Motors Corporate Seniority Date."

The concept of corporate seniority figures prominently in the parties' arguments thanks to one final agreement between the union and GM. In 2007, GM introduced its own two-tier wage structure similar to the one Delphi had introduced in 2004, designating employees hired after October 15, 2007 as "entry level employees" entitled to Tier-II wages. This agreement initially affected none of the Flint-East workforce, all of whom were Delphi employees at the time. But after GM hired those workers in 2009, including all the employees who bring suit here, it classified them as entry-level (i.e., Tier II-compensated) employees irrespective of what the 2009 MOU promised about maintaining their GM corporate seniority date.

**(C) The Grievance**

In 2010, employee Earline Young filed a group grievance with the UAW on behalf of all Flint-East employees protesting the payment of Tier-II wages. About a year later, Young wrote a letter to a union representative inquiring about the grievance's status. The representative informed Young that GM denied the grievance months earlier and that the union placed its own review of the grievance "on hold." When Young sought further clarification, the union responded on January 14, 2013, informing her that it withdrew the grievance for lack of merit. A few months later, two different employees, Shante Marshall and Jakeiya Anderson, cosigned an internal appeal with the union contesting its withdrawal of the group grievance. Although the UAW's constitution requires members to individually sign an appeal, only Marshall and Anderson did so. The union denied the appeal on March 16, 2015, deeming it non-meritorious.

**(D) District Court Proceedings**

Ninety-three Flint-East employees hired by GM in 2009 filed a two-count complaint against GM and the UAW in the Eastern District of Michigan. Count I states a hybrid § 301 claim, alleging that under the agreements discussed above, GM should be paying these employees Tier-I wages, and further, that the union breached its duty of fair representation by failing to press their grievance with GM. Count II alleges that the UAW breached its duty of fair representation whether or not GM paid the contractually proper wage.

The UAW and GM filed separate motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c), respectively. Both argued for dismissal, saying that: first, only Marshall and Anderson filed their complaint within the applicable six month statute of limitations because only they tolled the limitations period by perfecting a union appeal; and second, in the alternative, none of the appealing union members' contractual theories has merit.

When plaintiffs then moved to amend their complaint and explain the proposed amendment, the court permitted it. Later, after having considered the explained amendments, the court dismissed all plaintiffs' claims against both defendants.

Regarding dismissal of the hybrid § 301 claim, the court accepted defendants' argument that because only Marshall and Anderson signed the grievance appeal, as required by the UAW's constitution, the other 91 plaintiffs—having failed to exhaust their union remedies or toll the statute of limitations—filed their complaint too late. The court nonetheless addressed the merits of all the plaintiffs' claims and concluded that none of the contractual provisions cited in their complaint—or proffered by counsel at oral argument—included language entitling any of the plaintiffs to Tier-I wages. Finally, the court ruled that plaintiffs could not maintain an "independent" fair-representation claim against the UAW. The court denied leave to amend.

Forty-five of the original 93 plaintiffs timely appealed.

**II.**

This court reviews de novo the district court's dismissal of a complaint for failure to state a claim and its denial of leave to amend on futility grounds. *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 671 (6th Cir. 2003). In both cases, we "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010) (citing *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007)). To survive a motion to dismiss, the complaint must include sufficient factual allegations to state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

**A) The Employees' Hybrid § 301 Claim**

A hybrid § 301 claim consolidates "two separate but interdependent actions: one against the employer for breach of the collective-bargaining agreement and one against the union for breach of the duty of fair representation." *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1238–39 (6th Cir. 1993). Although the component claims are distinct, "[l]iability attaches to neither employer nor union unless fault can be proved as to both." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009) (citing *Roeder v. Am. Postal Workers Union*, 180 F.3d 733, 737 (6th Cir. 1999)).

The district court dismissed all but the two signing employees' hybrid § 301 claims on statute-of-limitations grounds. We too begin there.

*(1) Statute of Limitations*

The National Labor Relations Act's six-month statute of limitations applies to these claims. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983). A claim accrues "when the claimant discovers, or in the exercise of reasonable due diligence should have discovered, the acts constituting the alleged violation." *Robinson*, 987 F.2d at 1239 (quoting *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985)). But because union members must exhaust available union remedies before seeking redress in federal court, we toll the limitations period while an employee pursues those remedies. *See id.* at 1242.

The district court found that the employees' claims accrued on January 14, 2013, when the UAW formally informed them that it had withdrawn their group grievance. The parties accept that conclusion on appeal. The court then held, consistent with the UAW's argument, that because only Marshall and Anderson signed the letter appealing the union's withdrawal of their group grievance, only they tolled the statute of limitations and only their claims were timely. In

so holding, the court considered a number of documents referenced in the employees' complaint and that UAW attached to its motion to dismiss. We do the same. *See Comm'r Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." (citation omitted)).

On appeal here, the non-signing employees argue that Marshall and Anderson intended to appeal on behalf of the entire group, entitling all to tolling.

We agree with the district court that only Marshall and Anderson tolled the limitations period and thus met the six-month filing requirement. The employees concede that Marshall and Anderson alone complied with Article 33 of the UAW's constitution, which requires that employees individually sign an appeal of a union decision. Although the non-signers claim ignorance of the signature requirement, their union's constitution "is a written document, which [they] should have reviewed to ascertain [their] rights." *Rogers v. Bd. of Educ. of Buena Vista Sch.*, 2 F.3d 163, 167 (6th Cir. 1993). Ignorance of Article 33's signature requirement "is no excuse for . . . failure to comply with [its] requirements." *Burneson v. Thistledown, Inc.*, No. 06-3948, 2007 WL 1339839, at *3 (6th Cir. May 7, 2007) (citing *Rogers*, 2 F.3d at 167); *see also Rogers*, 2 F.3d at 167 ("Simple ignorance is no excuse for failure to exhaust."); *Hammer v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 178 F.3d 856, 858 (7th Cir. 1999) ("Union members . . . have an affirmative duty to educate themselves about the available internal procedures.").

Moreover, within that Article, the only language printed in bold is the signature provision at issue here, which states: "Any appeal . . . **shall be made in writing** . . . and must **include an original physical signature,** signed by the member(s). . . . [E]lectronic signatures shall not be**

**permitted**." These union members do not argue that Article 33 provides inadequate notice of the individual signature requirement.

Instead, the non-signers raise two arguments for why UAW should be estopped from enforcing compliance with its signature requirement. We find neither persuasive.

*First*, they insist that because the UAW allowed Young's group grievance to proceed from 2010 to 2013 without requiring the individual signature of each grievant, the union lulled them into believing that the union would not enforce the signature requirement at the appeal stage. By its terms, however, Article 33 governs the procedures for appealing the denial of a grievance up the union chain-of-command and not the requirements for filing grievances with local union officials. Accordingly, for the non-signers' lulling argument to carry weight, they needed to allege that UAW imposed elsewhere a grievance-stage signature requirement, the waiver of which could induce them to reasonably believe that UAW would allow a group appeal. The non-signers have not done so. To the contrary, in responding to UAW's motion to dismiss, the employees explicitly denied the existence of a grievance-stage signing requirement and described the grievance process as "informal."[1]

*Second*, the non-signers rely on Marshall and Anderson's statement in their union-appeal letter that "we are appealing the withdrawal of our group grievance," which they argue should have signaled to the UAW that their appeal letter served as an appeal for a larger group. They also note that the union addressed its denial letter to "Shante Marshall, et al." and "Jakeiya Anderson, et al.," implying UAW's awareness of the other employees. They argue that the

---

[1] In their appellate brief, the employees assert that "[t]here is also a signature requirement for grievances." In doing so, they directly contradict their statement to the district court that "there was never a requirement by the UAW of formal signatures by each grievant on group or individual grievances." Given the employees' shifting position on the existence of a grievance-stage signature requirement—and their ample opportunity to bring any such requirement to the district court's attention—we accord no weight to their assertion here.

wording of their appeal letter put UAW on notice of Marshall and Anderson's intent to appeal on the group's behalf, and that UAW should therefore have alerted the non-signers of their failure to comply with Article 33's signature requirement. And because UAW failed to do so, the non-signers ask this court to estop the UAW from enforcing it here.

In support, the non-signers lean on *Dragomier v. International Union United Automobile*, No. 4:11cv862, 2012 WL 6738766 (N.D. Ohio Dec. 29, 2012). There, plaintiff Dragomier petitioned the UAW to pursue a grievance on behalf of himself and 35 other union members, and when it declined, Dragomier filed an internal union appeal. *Id.* at *2–3. Although Dragomier alone signed the appeal, the district court excused the other plaintiffs' noncompliance with the UAW's signature requirement because the record was "replete with evidence that throughout the [appeal] process . . . all believed that Dragomier was representing all 35 appellants." *Id.* at *7. Indeed, Dragomier's submissions to the appeals board "repeatedly" referred to "all the Grievants in this case," and the appeals board reciprocated by referring to "the Appellants" in its decision. *Id.* at *7–8.

The court below distinguished *Dragomier* and relied instead on a case it found more analogous to the facts here. In *VanRiper v. Local 14, International Union United Automobile, Aerospace and Agricultural Implement Workers of America*, plaintiff Hanley filed a grievance on behalf of himself and others, which GM denied. No. 3:13cv2101, 2015 WL 45533, at *2 (N.D. Ohio Jan. 2, 2015). Thereafter, Hanley and another employee, VanRiper, signed separate appeals, each stating that "I would like to appeal the decision that was made" regarding "the Tim Hanley group grievance." *Id.* at *3, *5. VanRiper's appeal stated that "[m]y personal appeal is based on the following documents," and Hanley's asked the UAW to "review my situation." *Id.* at *5. Because "the plain language of the VanRiper and Hanley appeals demonstrate[d] the

appeals were their own, and not on behalf of the entire group," the *VanRiper* court enforced the union's signature requirement and held that the non-signatories failed to exhaust their union remedies. *Id.* at *5.

We agree with the district court that the facts here fall closer to *VanRiper*. True, the UAW addressed its appeal-denial letter to "Marshall, et al." and "Anderson, et al.," but as the district court noted, the union's use of "et al." could "simply referenc[e] the fact that two appellants [Marshall and Anderson] are subject to the decision." The same ambiguity exists regarding Marshall and Anderson's use of "we," because they cosigned their appeal letter. Moreover, with the exception of *Dragomier*, courts in this circuit generally have required union members to comply strictly with union procedures in exhausting their union remedies. *See, e.g.*, *Williamson v. Lear Corp.*, 183 F. App'x 497, 502 (6th Cir. 2006) ("easily reject[ing]" claim that plaintiffs tolled the statute of limitations by sending a letter to the UAW's president instead of the appropriate appeal body because "the plaintiffs did not comply with the procedural requirements of the UAW's appeal process"); *Pribyl v. Ford Motor Co.*, 14-CV-13791, 2015 WL 4183391, at *6 (E.D. Mich. July 10, 2015) (dismissing a claim as time-barred despite plaintiff's appeal letter to union president because plaintiff "provided no citation establishing that this was the appropriate appeal process"); *Brown v. United Auto., Aerospace & Agric. Implement Workers of Am., Local 892*, 682 F. Supp. 901, 903, 904 n.2 (E.D. Mich. 1987) (crediting "UAW's argument that due to plaintiff's lack of compliance" with Article 33's signature requirement, "the statute of limitations was not tolled"); *see also Legutko v. Local 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1054 (2d Cir. 1988) (concluding that informal correspondence failed to toll limitations period because it did not comply with union grievance procedures). In this case, the 43 employees who ignored Article 33's signature requirement did not follow the

established union procedures for appealing the denial of their grievance, and as the district court held, filed their complaint too late.[2]

### (2) Breach of the Relevant Agreements

To succeed on their hybrid § 301 claim, Marshall and Anderson must show that GM breached a collective bargaining agreement and that the UAW breached its duty of fair representation. *Robinson*, 987 F.2d at 1238–39.

Marshall and Anderson raise a three-step argument for why GM was contractually required to increase their wages to Tier-I levels when it hired them in 2009. They argue first that they "brought their Delphi seniority with them" to GM. They next point out that GM did not establish its two-tier wage structure until 2007, with GM employees hired before the effective date continuing to receive Tier-I wages. And because Delphi hired Marshall and Anderson in 2006, they claim entitlement to Tier-I wages just like other GM employees hired in 2006.

Marshall and Anderson, however, provide no support for their argument's major premise—that they "brought their Delphi seniority with them" to GM. In fact, the relevant contracts say the opposite. When GM hired the Flint-East employees in January 2009, it agreed to a memorandum of understanding with the UAW that assigned those employees a March 17, 2008 GM corporate seniority date. Although the 2009 MOU makes an exception for employees

---

[2] In their proposed amended complaint, the employees attempted to bolster their statute-of-limitations argument by citing to an internal union memorandum analyzing the merits of Marshall and Anderson's appeal. The memo concludes that "these members all received the Buy-Down." This language is puzzling because neither Marshall nor Anderson received the buy-down. Accordingly, the employees argue that the UAW must have reviewed the claims of all Flint-East employees, not just Marshall and Anderson. But that cannot be the case either, since the vast majority of Flint-East employees, like Marshall and Anderson, did not receive the buy-down. In other words, the memorandum's conclusion that "these members all received the Buy-Down" could not refer to the entire Flint-East workforce. We therefore find it unhelpful in resolving the non-signers' estoppel argument.

hired before October 18, 1999 (*id.*), Marshall and Anderson cannot claim its benefit because Delphi hired both in 2006. We agree with the district court that because their March 17, 2008 seniority date "post-dates the effective date of GM's new two-tier wage system . . . [Marshall and Anderson] identify no contractual basis for finding that this seniority date would have triggered GM's higher Tier I wage."

Marshall and Anderson assail the assignment of the March 17, 2008 corporate seniority date as "fictitious" and "artificially-backdated," yet nothing in the relevant agreements gave these employees the right to have their Delphi corporate seniority dates transfer to GM. Indeed, they concede that "there is not specific contractual language that says these employees are grandfathered in." Their inability to tether their seniority argument to specific contractual provisions warrants dismissal.

Marshall and Anderson next argue that even if their original complaint failed to state a claim, the district court erred in denying leave to amend. The district court denied their request on futility grounds, reasoning that "Plaintiffs' proposed amended complaint does not allege facts that provide a basis for finding that Plaintiffs other than Marshall and Anderson submitted the internal appeal and thus tolled the statute of limitations, and it does not provide allegations that would defeat a motion to dismiss as to these two Plaintiffs."

We agree with the district court that the proposed amended complaint states no plausible contractual claim regarding Marshall and Anderson. In an effort to show that GM considered Delphi employees to have GM corporate seniority dates, the proposed amendments alleged that: GM handled Delphi's payroll and paid bonuses to Delphi employees even before it formally hired those employees in 2008 and 2009; GM's payroll records list many Delphi employees as having 2006 GM corporate and plant seniority dates; the Department of Labor classified the

Delphi employees as "GM employees leased to Delphi;" and GM permitted Delphi employees to vote on the ratification of the 2007 GM-UAW National Agreement.

Surely, these allegations confirm Delphi and GM's close working relationship and suggest that at least for some purposes, GM treated Delphi employees as its own, even before the 2009 workforce transfer. But none accord Marshall and Anderson a *contractual right* to have their 2006 Delphi corporate seniority dates transfer to GM, nor do they supersede the 2009 MOU's establishment of a March 17, 2008 GM corporate seniority date. We thus agree with the district court that nothing in the proposed amended complaint would warrant granting leave to amend with respect to Marshall and Anderson.

## B) The "Independent" Fair-Representation Claim Against the UAW

Count II of the employees' complaint asserts that the UAW breached its duty of fair representation separate from GM's paying a contractually proper wage. The district court dismissed this claim, concluding that they "ha[d] not presented any allegations of breach of fair representation that are independent of their section 301 claims." We agree.

As explained, the two claims anchoring a hybrid § 301 action are interdependent—"if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990). Although "[f]ederal courts have jurisdiction to hear fair representation suits" under 28 U.S.C. § 1337(a), *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 83 (1989), "[w]here the union member produces a 'colorable allegation' that the employer breached a collective bargaining agreement . . . jurisdiction lies under § 301, not § 1337," *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 425 (6th Cir. 1998) (citing *White*, 899 F.2d

at 561). Grounding jurisdiction in § 301 where plaintiffs allege breach of contract prevents them from circumventing the rule that "[l]iability attaches to neither employer nor union unless fault can be proved as to both." *Courie*, 577 F.3d at 630 (citing *Roeder*, 180 F.3d at 737); *see also White*, 899 F.2d at 562.

Here, the employees allege that the UAW failed to zealously pursue their grievance contesting GM's alleged breach of multiple collective bargaining agreements—a "quintessential hybrid § 301" claim. *White*, 899 F.2d at 561–62. They nonetheless argue that their fair-representation claim is in fact independent of any breach by GM. As support, they point to allegations that the union dragged its feet during the grievance process, misled unidentified plaintiffs about the status of the grievance, and responded tardily to employees' inquiries. But these allegations all relate to their union's conduct in pursuing their grievance against GM. They are not, therefore, "independent" of whether GM breached any agreements. As this court explained in *White*:

> In none of the cases in which this and other courts have asserted jurisdiction . . . over separate causes of action alleging breach of a union's duty of fair representation . . . has there been a colorable allegation that a collective bargaining agreement had been breached. Rather, in all of those cases, the principal issue joined by the controversy arose from circumstances rooted in the relationship existing between a union member and his union.

*Id*. at 560–61 (collecting cases) (citations omitted). Because the employees raise a "colorable allegation" that GM breached a collective bargaining agreement, jurisdiction lies under § 301, *id.* at 561, and they cannot avoid having to show breach-of-contract by "artfully pleading" their claim as independent, *id.* at 562. We therefore affirm the district court's dismissal of their fair-representation claim.

**III.**

For these reasons, we AFFIRM the district court's judgment.