COLE v. SOUTHERN MICHIGAN FRUIT ASS'N.

CORPORATIONS—BY-LAWS—CO-OPERATIVE MARKETING.

Where by-laws of nonprofit corporation, organized for purpose of co-operative marketing of fruit, provided that each day's shipment should be prorated and filed separately, and that, on receipt of returns for each day's shipment, check should be drawn for amount due each member for fruit shipped on said day, association, on discovering it had sustained loss, had no authority to place all receipts in general fund and prorate it among members, but payment should be made in accordance with by-laws.

As to cooperative marketing of farm products by producers' association, see annotation in 25 A. L. R. 1113; 33 A. L. R. 247; 47 A. L. R. 936; 77 A. L. R. 405.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted October 19, 1932. (Docket No. 151, Calendar No. 36,659.) Decided December 6, 1932.

Assumpsit by L. L. Cole against Southern Michigan Fruit Association, a nonprofit co-operative corporation, for sums alleged to be due under a marketing agreement. Judgment for plaintiff. Defendant appeals. Affirmed.

*Lewis R. Williams,* for plaintiff.

*David Anderson,* for defendant.

NORTH, J. The defendant is a nonprofit Michigan corporation organized for the purpose of providing co-operative methods of disposing of fruit and co-operative methods of purchasing supplies needed by fruit growers in the locality where plaintiff resides. Prior to bringing this suit plaintiff had been a member of the association for more than 20 years; and he, together with other members, signed a so-called marketing agreement. This agreement, together with certain by-law provisions, sets forth the manner in which the defendant association was to represent its members in the sale of their fruit. For many years defendant had marketed large quantities of grapes through an association now known as the Federated Fruit & Vegetable Growers, Inc. In 1930 this latter association became insolvent. It was then owing about $55,000 to defendant. Its failure to pay defendant this amount resulted in the latter's inability to pay in full for the fruit it had received from and shipped for its members during the season of 1930. In this suit plaintiff had judgment for the balance he claimed was due to him for 1,414 baskets of grapes delivered to and sold by

defendant.  From this judgment defendant has appealed.

A further statement of facts is essential to an understanding of the contention made by the respective parties.  On October 16, 17, and 18, 1930, plaintiff delivered to defendant nearly a carload of grapes by loading them into a car procured by defendant. Another grower loaded 86 baskets of grapes in the same car.  Just at this time a buyer with two automobile trucks offered to purchase these grapes.  The bargain was consummated by Mr. Hardy, who was managing this phase of defendant's business.  The quantity of grapes in this car was not sufficient to make two full truck loads, and a further quantity of grapes sufficient to fully load both trucks was secured from plaintiff's vineyard.  In this way a total of 1,414 baskets of plaintiff's grapes were sold and delivered to this buyer October 19, 1930.  Mr. Hardy was paid by check a total of $628.28, and of this amount $593.88 was for plaintiff's grapes.  The money received went to the defendant association; and it is asserted by plaintiff that he is entitled to be paid for this particular shipment of October 19th. On the other hand, the defendant association asserts that this money went into its general funds and should be distributed by *pro rata* payment to all the members for money due them for fruit shipped through the defendant association during the season.  The association claims it was acting only as agent in making shipments and sales for its members; that it did not become the owner of the grapes, and that it cannot be held liable for payment unless it received the money for them, and it not having received money sufficient to pay in full for the grapes which it shipped for its members, it is not liable to plaintiff or its other members beyond the

amount it has received and already paid to them. Acting accordingly, the defendant has paid to plaintiff and other members two partial payments, each being 16 per cent. of the amount due.

This controversy involves a construction of the association's by-laws and marketing agreement. Section 10, article 3, of the by-laws, in part reads:

"The financial secretary shall keep the accounts of the association, an account with each member of the association, and with each person or firm to whom the association shall sell or consign fruit. Each day's shipments shall be prorated and filed separately, and on receipt of returns for each day's shipments, he or she shall at once prepare a statement of the whole number of packages of each class and kind of fruit sold on said day; and the total amount of money received for said fruit, with the net price per ton or package, and the number of tons or packages shipped by each member on said day and the amount due each member for the same. Said statement shall also show the amount received for all varieties of fruit, other than grapes, shipped on the same day and not pooled. He or she shall draw a check upon the treasurer for the amount due each member for fruit shipped on said day to be signed by the president and secretary of the association, or by an employee designated by them."

The marketing agreement provides that the member appoints the association as his sales agent to sell his grapes, and contains the following:

"3. (a) The association shall pool, or mingle, the products of the growers with products of a like variety, grade and quality delivered during the crop season by other growers; and each pool shall cover the shipments of each day during the crop season, as determined by the association. * * *

"4. The amount to be paid to the grower shall be based on the proportional value in grapes delivered by him to the association, out of the total receipts of money from the sale or disposition of the grapes, in any form according to variety, quality, and grade, less the deductions hereinabove mentioned, all as determined by the association. Payments shall be made from time to time in the discretion of the association."

In this connection, defendant's manager, Mr. Hardy, testified that the payments made were "on the basis of the sales for the day" and "that 16 per cent. payment was made to all growers who had put grapes into the association after October 2d" regardless of whether the money had been received for each grower's shipment. He also testified that plaintiff's 1,414 "packages" of grapes were delivered to the buyer on Sunday, October 19th, and that he did not believe that any other grapes than those contained in this shipment were delivered on that day. We think the fair inference is that there were no other grapes delivered on that day. The defendant's bookkeeper testified as follows:

"*Q.* Now did you pool out each day's shipment?
"*A.* Yes, sir. Just as we always do."

We think it is evident from this record that after defendant association discovered it probably would experience a loss by reason of the insolvency of the Federated Fruit & Vegetable Growers, Inc., it sought to make an equitable distribution among its members of all moneys received by it. This, however, as was held by the circuit judge, was not in accordance with the provisions of defendant's by-laws, which are binding upon the parties to this suit. As set forth in the opinion of the trial judge,

the by-laws provide: "Each day's shipment shall be prorated and filed separately." The undisputed proof discloses that defendant received full payment for the shipment of October 19th; and the by-laws provide that, "on receipt of returns for each day's shipments," the defendant's financial secretary shall prepare a statement of the total sales on that day and the total price received therefor, and "the amount due each member for the same," and that the secretary shall "draw a check upon the treasurer for the amount due each member for fruit shipped on said day." In view of the foregoing provision of defendant's by-laws, we think it clear that plaintiff was entitled to compensation on the basis of the shipment made October 19th as soon as payment was received for that shipment, after the association deducted therefrom its charge for the service rendered. This was the holding in the circuit court, and the judgment entered is affirmed. Costs to appellee.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.