ALLIED SUPERMARKETS, INC v GROCER'S DAIRY COMPANY

1. CORPORATIONS—COOPERATIVES—REFUNDS—DIVIDENDS.

Patronage refunds to customers who are shareholders in a corporation differ from dividends in that the refunds are contractual obligations to return a portion of the purchase price held by the corporation as agent or trustee for the purchaser and cannot be considered gain or income, while dividends are distributions of the net income of a corporation to its shareholders.

2. CORPORATIONS—BYLAWS—CONTRACT WITH SHAREHOLDERS.

The bylaws of a corporation, so long as adopted in conformity with state law, constitute a binding contract between the corporation and its shareholders.

3. CORPORATIONS—COOPERATIVES.

A corporation organized under the laws of Michigan is a cooperative corporation (a) if its incorporators or shareholders have adopted a "cooperative plan", (b) if it conducts less than half of its business with nonshareholders or nonmembers, and (c) if it either limits dividends to 7% or less or limits its shareholders or members to one vote regardless of the number of shares owned (MCLA 450.98, 450.99).

4. CORPORATIONS—COOPERATIVES—"COOPERATIVE PLAN".

A "cooperative plan" is "any mode of operation whereby the earnings are distributed on the basis of, or in proportion to, the value of property bought from or sold to shareholders and/or members or other persons" (MCLA 450.99).

5. CORPORATIONS—COOPERATIVES—"COOPERATIVE PLAN"—REFUND OF OVERCHARGES.

A company's distribution to its patrons of overcharges in proportion to their patronage is a "cooperative plan" (MCLA 450.99).

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–6] 19 Am Jur 2d, Corporations §§ 804–806, 809, 812, 822, 823.
[2] 18 Am Jur 2d, Corporations §§ 161–173.

6. CORPORATIONS—COOPERATIVES—CHANGE OF NAME.

    A cooperative corporation does not become a "regular profit corporation" merely by deleting the word "cooperative" from its name and transferring the definition of its "cooperative plan" from its articles of incorporation to its bylaws; and the general corporation act does not provide that a corporation which is, by operation of law, a cooperative corporation, must use the term "cooperative" in its name, nor does the act require that the details of the cooperative plan be stated either in the articles of incorporation or the bylaws, because the act defines a "cooperative plan" as a "mode of operation" adopted by the incorporators or shareholders.

Appeal from Kent, John T. Letts, J. Submitted Division 3 February 6, 1973, at Grand Rapids. (Docket No. 13901.) Decided February 26, 1973. Leave to appeal granted, 389 Mich 797.

Complaint by Allied Supermarkets, Inc., against Grocer's Dairy Company and the officers and directors of defendant corporation for dissolution and distribution of assets. Judgment for defendants. Plaintiff appeals. Affirmed.

*Honigman, Miller, Schwartz & Cohn* (by *Robert A. Fineman),* for plaintiff.

*Warner, Norcross & Judd* (by *John D. Tully),* for defendants.

Before: DANHOF, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

R. B. BURNS, J. In February, 1946, articles of incorporation (hereinafter articles) were filed with the Michigan Corporation and Securities Commission "for the purpose of forming a cooperative corporation" to be known as Grocer's Cooperative Dairy Company (hereinafter Cooperative). Article II of those articles provided for the production and sale of dairy products by the Cooperative to its shareholder-members and for the distribution of

the Cooperative's earnings according to a "cooperative plan". Article II also restricted the Cooperative to those rights, powers and privileges allowed by "the laws of the State of Michigan relating to Cooperative Corporations". Article IV granted to holders of the Cooperative's preferred stock (par value of $100 per share) the right to receive an annual cumulative dividend of $5 per share. Holders of Class A and Class B common stock were authorized to receive dividends "in the manner set forth in the bylaws * * * and as provided by the laws * * * relating to Cooperative Corporations". All shareholders were denied the preemptive right to acquire additional stock.

Bylaws were adopted which limited each shareholder-member to one vote, regardless of the number of shares owned, and which defined the "cooperative plan" as the return to shareholder-members of all "overcharges not * * * required in the conduct and/or expansion of the business of the corporation * * * in proportion to the patronage furnished by them". The Cooperative was granted the right of first refusal and the sale or transfer of stock was limited to persons or organizations approved by the board of directors.

In July, 1954, the Cooperative's articles of incorporation were amended "to change the corporation from a cooperative corporation to a regular profit corporation". The corporation's name was changed to Grocer's Dairy Company (hereinafter Company) and all references to "cooperative plan" and to "the laws of the State of Michigan relating to Cooperative Corporations" were deleted from the articles. Also, the amount of Class B common stock was increased. However, the bylaws still limited each shareholder to a single vote and still provided for patronage refunds to shareholders.

In 1955, 1956, 1957, 1958, 1966, and 1969, the articles were amended to increase the Company's capital stock. In 1962, the articles were amended to reduce the Company's capital stock. The bylaws were amended to reflect the changes in the Company's capital structure. However, neither the Company's mode of operation nor the rights of the shareholders were altered.

Allied Supermarkets, Inc. (hereinafter Allied), became a shareholder of the Company in 1963, by virtue of its purchase of Plumb Supermarkets, Inc (hereinafter Plumb). When it purchased Plumb, Allied acquired 2 shares of the Company's Class A common stock and 454 shares of its Class B common stock at the par value of $45,600. In 1963 and 1964, Allied purchased substantial quantities of dairy products from the Company for sale at the former Plumb stores and received proportionate patronage refunds. In 1965, the Company ceased servicing the Muskegon area. Seven of the 11 former Plumb stores were located in that area. Hence, Allied's purchases and refunds declined sharply. By 1967, Allied had discontinued operations in Western Michigan. Thereafter, it made no purchases from the Company and received no rebates.

When the Company discontinued servicing the Muskegon area, Allied requested a partial redemption of its stock. In 1966, after it had decided to discontinue operations in Western Michigan, Allied requested a redemption of its entire holdings. The Company offered to redeem Allied's holdings for $45,600 or to hold and sell the stock for Allied for the full par value of $57,000. Allied had received a stock dividend of 114 shares of Class B common stock in 1966. The offer was never accepted and no counter-offer was made.

In 1970 Allied filed this action, praying for dissolution of the Company and distribution of its assets. It was, and still is, Allied's claim that a "regular profit corporation" may not distribute patronage refunds, but must distribute dividends equally to all shareholders. The case was tried before the Kent County Circuit Court sitting without a jury. The trial court held that, even if the Company had improperly distributed its income, Allied could not complain of such distributions because, for at least two years, it had consented to payment of refunds and had accepted the benefit of such refunds. Judgment was entered for the Company and for the individual defendants. Allied appeals.

We affirm.

A distribution of the net income of a corporation to the shareholders of that corporation is a dividend, though not called or considered such by the directors or the shareholders. *Barnes v Spencer & Barnes Co,* 162 Mich 509 (1910). Dividends must be distributed to shareholders in proportion to their holdings. *Polish American Publishing Co v Wojcik,* 280 Mich 466, 474 (1937).

Refunds differ from dividends because the former are not distributions of income. If a corporation which sells merchandise is contractually obligated to return to certain purchasers a portion of the purchase price, that portion of the purchase price subject to refund never becomes the property of the corporation and cannot be considered gain or income. Until refunded, the corporation merely holds the money as agent or trustee for the purchaser. Refunds must be made according to the terms of the contract which creates the obligation to refund. *Uniform Printing & Supply Co v Commissioner of Internal Revenue,* 88 F2d 75 (CA 7,

1937); *Midland Cooperative Wholesale v Ickes,* 125 F2d 618 (CA 8, 1942), *cert den,* 316 US 673; 62 S Ct 1045; 86 L Ed 1748 (1942); *San Joaquin Valley Poultry Producers' Ass'n v Commissioner of Internal Revenue,* 136 F2d 382 (CA 9, 1943); *United States v Mississippi Chemical Co,* 326 F2d 569 (CA 5, 1964).

Allied claims that the Federal cases cited above are inapplicable because they are income tax cases. We disagree. In those cases the Courts did not rely upon the Internal Revenue Code to define "refunds" and "income". Rather they relied upon sound principles of general commercial law.

The bylaws of the Company require it to distribute to its "patrons" all "overcharges not * * * required in the conduct and/or expansion of the business of the corporation * * * in proportion to the patronage furnished by them". The bylaws also require the Company to sell the bulk of its merchandise to its own shareholders. The bylaws of a corporation, so long as adopted in conformity with state law, constitute a binding contract between the corporation and its shareholders. *Cole v Southern Michigan Fruit Assn,* 260 Mich 617, 621–622 (1932).

Thus, the central question presented by this case is the legality of those provisions of the Company's bylaws which require patronage refunds to the Company's shareholders. If the Company is a cooperative corporation, the bylaw provisions are obviously proper. MCLA 450.98; MSA 21.99, and MCLA 450.106; MSA 21.107. On the other hand, if the Company is a "regular profit corporation", we must determine whether such a corporation may contract with its shareholders for refunds on their purchases.

It is our opinion that Grocer's Dairy Company is

now, and has always been, a cooperative corporation. A corporation duly organized under the laws of this state is a cooperative corporation (A) if its incorporators or shareholders have adopted a "cooperative plan", (B) if it conducts less than half of its business with nonshareholders or nonmembers, and (C) if it either limits dividends to seven per cent or less or limits its shareholders or members to one vote regardless of the number of shares owned. MCLA 450.98; MSA 21.99 and MCLA 450.99; MSA 21.100. A "cooperative plan" is any "mode of operation whereby the earnings of the corporation are distributed on the basis of, or in proportion to, the value of property bought from or sold to shareholders and/or members or other persons". MCLA 450.99; MSA 21.100.

It is undisputed that each shareholder-member of the Company is limited to a single vote, regardless of the number of shares owned, and that the Company does far more than half of its business with its own shareholder-members. The Company's distribution to its patrons of overcharges in proportion to their patronage is a "cooperative plan". The most common form of "cooperative plan" is the refund of overcharges. *State v Morgan Gin Co,* 186 Miss 66; 189 So 817, 818 (1939); *Midland Cooperative Wholesale v Ickes, supra,* 635; *San Joaquin Valley Poultry Producers' Ass'n v Commissioner of Internal Revenue, supra,* 384; *Farmers Cooperative Co v Birmingham,* 86 F Supp 201, 212 (ND Iowa, 1949). Therefore, the Company is a cooperative corporation.

A cooperative corporation does not become a "regular profit corporation" merely by deleting the word "cooperative" from its name and transferring the definition of its "cooperative plan" from its articles of incorporation to its bylaws. The Michi-

gan General Corporation Act does provide that a corporation which is, by operation of law, a cooperative corporation must use the term "cooperative" in its name. MCLA 450.99; MSA 21.100. The act does not provide that a corporation becomes a cooperative corporation only by use of the term "cooperative" in its name. Furthermore, the act does not require that the details of the cooperative plan be stated in either the articles of incorporation or the bylaws. The act defines a "cooperative plan" as a "mode of operation" adopted by the incorporators or shareholders.

A corporation's articles of incorporation must state the corporation's name. MCLA 450.1202(a); MSA 21.200(202)(a). The incorporation of a profit corporation is defective unless the corporation's name includes the term "corporation", "company", "incorporated", or "limited", or an abbreviation thereof. MCLA 450.1211; MSA 21.200(211). Whether or not the failure of the Company's articles of incorporation to accurately designate the Company as a cooperative renders the incorporation defective is not an issue we need decide. Only the state may challenge the validity of an incorporation. *Bridge Street & Allendale Gravel-Road Co v Hogadone,* 150 Mich 638 (1908). The state is not a party to this action.

Affirmed.

All concurred.