*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LYNNE S. SIMON,

        Plaintiff-Appellant,

v

SANFORD A. SIMON,

        Defendant-Appellee.

UNPUBLISHED
November 21, 2025
8:34 AM

No. 367260
Kent Circuit Court
LC No. 18-008177-CB

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In this member oppression action, plaintiff, Lynne Simon, appeals by right the trial court's opinion and order dismissing her claims of member and shareholder oppression against her brother, Sanford Simon, related to their family business. On appeal, plaintiff challenges the trial court's dismissal of her minority oppression claims, arguing that the trial court clearly erred by finding that defendant's acts were not willfully unfair and oppressive. Plaintiff also contends that the trial court erred by concluding that defendant was entitled to indemnification by the business for legal fees to defend against plaintiff's claims. We affirm.

## I. BACKGROUND

This case stems from a sibling dispute regarding Phil Simon Enterprises, Inc. and Phil Simon Properties, LLC (jointly, the business), which the parties inherited from their father. Defendant owns a 51% interest, and plaintiff owns a 49% interest. Plaintiff alleged that defendant engaged in a systematic pattern of "willfully unfair and oppressive conduct" that substantially interfered with plaintiff's ownership interests in the business. At the heart of plaintiff's case is a claim of an oppressive buyout offer in which plaintiff alleged that defendant deliberately took advantage of her physical and mental health conditions, as well as her intent to retire and move to Florida. As evidence of "willfully unfair and oppressive conduct," plaintiff cites to defendant's denial of plaintiff's request for $300,000 in one lump sum, which would have allowed her to purchase a house in Florida. As another example, plaintiff offers defendant's proposal to purchase her 49% ownership interest for $600,000 over 10 years, while concealing the business's true worth of approximately $8 million. Moreover, after making his buyout offer, plaintiff alleged that

-1-

defendant denied her access to the complete financial records necessary to make informed decisions about her substantial ownership stake.

Plaintiff also claimed that defendant systematically breached his fiduciary obligations through extensive financial misconduct and self-dealing. Plaintiff alleged, for example, that defendant used company funds for personal expenses; secretly paid his children salaries and director fees, despite their lack of qualifications or services rendered; charged the business $5,000 annually for storage in his personally-owned buildings; and misappropriated company funds to pay his personal legal defense fees. Additionally, plaintiff alleged that defendant abused his control through corporate governance violations, including appointing his son as director over plaintiff's objections, forging plaintiff's signature on corporate documents, falsifying board approvals, misrepresenting corporate actions to banks and lenders, and refusing to obtain required property appraisals in violation of contractual obligations.

After a four-day bench trial, the trial court found that defendant had not engaged in oppressive conduct and that defendant was entitled to indemnification for his attorney fees. This appeal followed.

## II. MINORITY MEMBER OPPRESSION

Plaintiff argues that the trial court erred by dismissing her claims for minority member oppression. We disagree.

## A. STANDARD OF REVIEW

"A trial court's factual findings in a bench trial are reviewed for clear error." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 59, 698; NW2d 900 (2005). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. This Court is especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (quotation marks, citations, and brackets omitted). We review a trial court's conclusions of law in a bench trial de novo. *Astemborski v Manetta*, 341 Mich App 190, 196; 988 NW2d 857 (2022).

The parties dispute the standard of review applicable to the trial court's determination of whether defendant's conduct was willful and oppressive. We conclude that plaintiff's contention that the trial court erred by treating the issue of oppression as a question of fact is misplaced. As will be discussed, the *definition* of oppression is a matter of law. However, this Court has recognized that the *determination* of whether "willfully unfair and oppressive conduct" *amounts to* oppression involves a fact-intensive inquiry requiring an assessment of credibility and context. See *Franks v Franks*, 330 Mich App 69, 99; 944 NW2d 388 (2019) (analyzing as a question of fact whether the defendant's actions may have substantially interfered with the shareholder's interests, such that the actions constituted willfully unfair and oppressive conduct). Accordingly, the trial court properly treated its analysis as one grounded in factual findings, subject to deferential review on appeal.

## B. OPPRESSION FRAMEWORK

This case involves the application of the Michigan Limited Liability Company Act (MLLCA), MCL 450.4101 *et seq.*, and the Michigan Business Corporation Act (MBCA), MCL 450.1101*et seq.*, both of which prohibit willfully unfair and oppressive conduct against shareholder interests. The relevant provision of the MLLCA states:

> "[W]illfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure. [MCL 450.1489(3).]

And the relevant portion of the MBCA states:

> "[W]illfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other member interests disproportionately as to the affected member. The term does not include conduct or actions that are permitted by the articles of organization, an operating agreement, another agreement to which the member is a party, or a consistently applied written company policy or procedure. [MCL 450.4515(2).]

This statutory symmetry reflects a deliberate legislative choice to create uniformity of protection for minority owners across entity types, addressing their unique vulnerability. See *Franks*, 330 Mich App at 89. Accordingly, we apply the same oppression framework under both MCL 450.1489(3) and MCL 450.4515(2).[1]

To prevail on a shareholder oppression claim, the plaintiff must prove by a preponderance of the evidence that the plaintiff was a shareholder of the corporation; the defendant was "in control of the corporation"; the defendant engaged in acts; and those acts were "illegal, fraudulent, or willfully unfair and oppressive" to the corporation or to the plaintiff as a shareholder. *Franks*, 330 Mich App at 99. Additionally, the plaintiff must prove that the defendant took those actions with the intent to interfere with the plaintiff's interests as a shareholder. *Id*. at 99-100.

---

[1] Notably, the trial court took this approach, treating the shareholder oppression claim and the member oppression claim as one unified claim on the basis that the language of the two statutes is nearly identical and the standard for liability is the same.

However, evidence of member oppression must be viewed in conjunction with the business-judgment rule, which is summarized as follows:

> Our Supreme Court has explained that courts generally will not substitute their judgment for that of directors concerning dividend policies in the absence of evidence that the policy was fraudulent or done in bad faith. This is because courts are reluctant to intervene in the affairs of corporate bodies absent a clear showing of actual or impending wrong. Under the business-judgment rule, courts refrain from interfering in matters of business-judgment and discretion unless the directors or officers are guilty of willful abuse of their discretionary powers or act in bad faith. [*Id*. at 100.]

## C. APPLICATION TO FAMILY MEMBERS' EMPLOYMENT

With regard to plaintiff's allegation that defendant engaged in oppressive conduct when he employed members of his immediate family, specifically, his wife, as office manager, as well as two of his children, the trial court provided the following analysis of plaintiff's evidence:

> Much of these allegations can be disposed of easily. As company president and general manager, [defendant] clearly has both the right and responsibility to hire qualified employees. As the *Franks* court intimated, shareholders who own unmarketable shares of closely held corporations often obtain pecuniary benefits from their shares by working for the corporation. *Id.*, at 93, 944 NW2d 388, 401. They also sometime[s] hire spouses. And so long as the spouse is qualified, and so long as the spouse performs the labor contracted for, and so long as the compensation is reasonable, there is nothing inappropriate about it.

The record supports these conclusions, as well as the trial court's findings that defendant's employment of his family members did not constitute oppressive conduct in this case.

## 1. DEFENDANT'S WIFE

The evidence overwhelmingly supports the trial court's conclusion that the employment of defendant's wife, Cindy Simon, was a legitimate business decision, rather than an act of shareholder oppression. First, Cindy testified that she began working for the family business while her father-in-law was still alive, initially part-time, five to six hours per day, six days per week. This history establishes that her involvement in the company predated the present dispute and was not manufactured for improper purposes. Second, for ten to twelve years, Cindy worked full-time and carried substantial responsibilities, including oversight of office operations, banking, marketing, real estate prospecting, and tenant management. These tasks were essential to the business's continued operations, which plaintiff never objected to, and was not able to perform herself. Third, the record demonstrates that Cindy performed these services without any compensation until late 2017. The fact that she worked for years without pay undermines any suggestion that her employment was a scheme to siphon corporate assets. When she did begin receiving compensation, the trial court did not err by finding that her salary and benefits were reasonable in light of her responsibilities and long hours. Finally, plaintiff presented no credible

evidence that Cindy's compensation was excessive, unearned, or inconsistent with industry standards. Therefore, the trial court properly concluded that "nothing about Cindy's employment constitutes evidence of shareholder oppression."

## 2. DEFENDANT'S CHILDREN

Although the trial court acknowledged that the testimony at trial regarding the nature and extent of the defendant's children's work was "vague," we find no clear error in the trial court's conclusion that their salaries and benefits did not amount to fraud against plaintiff's interest as a shareholder. The children did not have any stock interest with the business and were paid just over $25,000 for both per year as consulting fees. This sum was modest in comparison to the business's overall operations, and plaintiff produced no evidence that these payments materially harmed the business or her interests as a shareholder.

Additionally, the evidence established that defendant's son contributed substantial and relevant services over the years. As a youth, he performed maintenance and yardwork, and during college, he assisted with tenant research, lease review, and tenant relations. After earning an undergraduate degree from Colgate and a juris doctor from Georgetown University, he traveled out-of-state on behalf of the business to meet with tenants, property managers, and attorneys. And at times, he shouldered significant management responsibilities. During one summer, when defendant was battling health issues and plaintiff could not perform any office duties, defendant's son worked nearly full-time at the office with Cindy to ensure continuity of operations. He even served as a business director until his law firm required his resignation.

The record also shows that defendant's daughter contributed valuable services to the business, including that she played a central role in diversifying the tenant base. And like her brother, she also traveled out-of-state on multiple occasions to address tenant matters in person. Therefore, taken together, this evidence establishes that the children were not mere recipients of unearned benefits, but rather contributed meaningfully to the business's success. Accordingly, the trial court did not clearly err by finding that plaintiff was not oppressed as a minority shareholder when defendant hired close family members. See *Franks*, 330 Mich App at 99.

## D. APPLICATION TO STORAGE FACILITIES

With respect to the two storage facilities, plaintiff alleged that defendant engaged in oppressive conduct when he "secretly paid himself rental fees" totaling approximately $50,000 in rent for storage between 2015 and 2022. The trial court, however, rejected this claim, and we find no error in its determination.

The trial court found that storage units

were necessarily commissioned when the Stadium Arena closed as the company need[ed] to store its contents upon the foreclosure of the property. As time passed, and as the company sold off much of the contents, the storage units remain a liability of the company while providing some, but not much, benefit. The court here does not play the role of outside consultant recommending ways to reduce costs and increase profits. Its only role is to determine whether the storage units, considered together with all the evidence introduced at trial, constitute evidence of

shareholder oppression. It's not for the court to decide whether the cost of the storage units exceed their value. The fact is, they provide some value, and the court is satisfied that [defendant's] decision to maintain them is within his discretion and subject to the business judgment rule. As the court finds no evidence of fraud or bad faith, the storage units do not evince shareholder oppression.

The record supports these findings.

Defendant's testimony established that he allowed the business to use the storage space rent-free for many years and only began charging rent in 2013, when insurance, property tax, and maintenance costs significantly increased. He charged $5,000 annually for approximately 15,000 square feet, which was below market and significantly less than the $12,000 annual rent paid by another tenant for a much smaller pole barn on the same property. In this case, the trial court found defendant's testimony credible, and this Court is "especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses." *Straughn*, 331 Mich App at 215.

Moreover, we agree with the trial court's application of the business-judgment rule. As our Supreme Court stated, "So long as the directors of a corporation control its affairs within the limits of the law, matters of business judgment and discretion are not subject to judicial review." *Reed v Burton*, 344 Mich 126, 131; 73 NW2d 333 (1955) (quotation marks and citation omitted). Additionally, "[a] court should be most reluctant to interfere with the business judgment and discretion of directors in the conduct of corporate affairs." *In re Estate of Butterfield*, 418 Mich 241, 255; 341 NW2d 453 (1983); see also *Churella v Pioneer State Mut Ins Co (On Remand)*, 258 Mich App 260, 270-271; 671 NW2d 125 (2003). "In the absence of bad faith or fraud, a court should not substitute its judgment for that of corporate directors." *In re Estate of Butterfield*, 418 Mich at 255. In this case, defendant's management decisions regarding operational costs, including whether to retain storage space, are entitled to deference if they are made in good faith. The record supports the conclusion that defendant acted transparently and reasonably, and that the rental arrangement was fair to the company.

In sum, the modest storage expense did not materially interfere with plaintiff's interests as a shareholder, and accordingly, the trial court did not clearly err by finding that the storage arrangement did not constitute shareholder oppression. See *Franks*, 330 Mich App at 99.

## E. APPLICATION TO ACCOUNTING PRACTICES

Plaintiff also alleged that defendant improperly dispersed himself funds from the corporate accounts. The trial court agreed with plaintiff that "these various loans are not supported by promissory notes," which gave the loans the appearance of "raids on the company bank account for selfish, personal reasons." However, the trial court reasoned that, based on testimonies from the business accountants, the transactions were legitimate. In particular, the trial court made the following findings:

Though there were no separate promissory notes, [the accountant] was able to show specific bank deposits, coupled with journal entries, coupled with specific withdrawals that matched the various financial transactions identified by [plaintiff]. The court finds no evidence that [defendant] surreptitiously removed funds from

-6-

the company for personal selfish reasons. The court is satisfied that the transactions identified in trial were legitimate, and in no way constitute fraud or bad faith.

The evidence supports the trial court's conclusions. Plaintiff's allegations of irregular accounting practices are not sufficient evidence that defendant acted in a way that was "illegal, fraudulent, or willfully unfair and oppressive." MCL 450.1489(3). To the contrary, it was established during the bench trial that, like his father before him, defendant made loans of his own funds to the business to improve cash flow and reserves. Defendant documented the loans in the business's financial records with itemized balance sheets. Don Stoepker, an accountant who worked for the business for 30 years, testified that, if the financial information was not correct, the accounting firm would not have recorded it in the financial records.

Jan Iwema, an accountant who worked for the business for 25 years, testified that when the parties' father passed away in 2003, "there was very little cash and a lot of debt." Iwema testified that defendant would sometimes put his bonuses back into the business, which the accounting firm would verify through bank deposit slips. Although plaintiff alleged that this practice subjected the business and officers to possible IRS liability, Iwema testified that she followed the IRS code regarding reimbursements. Regarding plaintiff's allegation that defendant did not pay dividends, Iwema testified that defendant made the business decision not to pay dividends. However, there were "draws" of company cash paid to the owners. For example, in 2017, plaintiff received a distribution of $20,873.63—although nothing was distributed to defendant. In fact, according to the business's financial records, plaintiff received $194,937.98 from the period from 2013 to 2022, and defendant received only $137,837.19 for the same period of time.

The accountants' testimonies thus reflect that there were no patterns of unfairness or oppression by defendant. Instead, defendant's conduct aligned with prior management customs and reflected modest self-compensation and significant personal financial contributions to sustain the business. Additionally, plaintiff's claims of oppression are undermined by her longstanding compliance with the management customs, her failure to exercise her rights as the co-director, and the benefits she regularly received from the business. Therefore, the trial court did not clearly err by finding that defendant's accounting methods did not constitute oppressive conduct. See *Franks*, 330 Mich App at 99.

## IV. INDEMNIFICATION

Plaintiff argues that the trial court erred by allowing defendant's indemnification because he failed to obtain required corporate approval or submit the indemnification to a vote. Next, plaintiff argues that indemnification is not required under the bylaws or statute because defendant acted in bad faith. We disagree.

## A. STANDARD OF REVIEW

We review de novo whether the trial court properly interpreted and applied the relevant statutes and court rules. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). We also review de novo the proper interpretation and application of a contractual agreement. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005).

## B. OBTAINING A VOTE

Pursuant to the MBCA and MLLCA, stockholders of a corporation or members of a limited liability company may agree to indemnify a shareholder or member for costs, including attorney's fees, to defend against claims related to acts taken on behalf of the business. MCL 450.1561; MCL 450.4216(a). Additionally, MCL 450.1564a sets forth the general rule that indemnification must be authorized in each case according to specific procedures, including a vote. However, plaintiff's reliance on MCL 450.1564a to argue that a board vote was required overlooks the binding effect of a corporation's bylaws, which can override statutory default requirements, such as voting requirements.

First, the plain language of MCL 450.1564b(4) permits corporations to establish mandatory indemnification via articles of incorporation, bylaws, board resolution, or shareholder agreement. Second, MCL 450.1488 allows a shareholder agreement to modify statutory requirements, provided that the agreement complies with the requirements of that section. Therefore, shareholder agreements can establish mandatory indemnification and alternative procedures for indemnification without requiring a vote pursuant to MCL 450.1564a. Michigan law recognizes that bylaws, once validly enacted, constitute a binding contract between the corporation and its shareholders. *Allied Supermarkets, Inc v Grocer's Dairy Co*, 45 Mich App 310, 315; 206 NW2d 490 (1973). "The fundamental goal of contract interpretation is to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement." *Dobbelaere v Auto–Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007). Unambiguous contracts are not open to judicial construction and must be enforced as written. *Rory*, 473 Mich at 464.

In this case, both the bylaws and operating agreement include a mandatory indemnification provision. It is undisputed that defendant was indemnified without a vote. However, neither the corporate bylaws nor operating agreement required one.

The bylaws state, in relevant part:

The corporation shall indemnify any person(s) who are or were a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that they were director(s), officer(s), employee(s) or agent(s) of the corporation . . . against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by them in connection with such action, suit or proceeding if they acted in good faith and in a manner they reasonably believed to be in good faith and in a manner they reasonably believed to be in or not opposed to the best interests of the corporation.

The operating agreement states:

5.5.1. The General Manager and/or Members shall not be liable, responsible, or accountable, in damages or otherwise, to any Member or to the Company for any omission or any net performed by the General Manager and/or Member within the scope of the authority conferred on the General Manager and/or Member by this

Agreement, except for fraud, gross negligence, and intentional breach of this Agreement, or as otherwise required by the Act.

5.5. 2. The Company shall indemnify the General Manger and/or Member to the fullest extent permitted by the Act for any liability arising from any actual or alleged omission or any actual or alleged act performed by the General Manager and/or Member within the scope of the authority conferred on the General Manager and/or Member by this Agreement except for fraud, gross negligence, or an intentional breach of this Agreement.

Accordingly, the trial court correctly determined that the defendant was entitled to indemnification because the governing documents contain no requirement of a shareholder or member vote for indemnification, and the caselaw permits enforcement of bylaws and operating agreements as written. See *Rory*, 473 Mich at 464.

## C. STATUTORY STANDARDS OF GOOD FAITH

We also determine that defendant acted in good faith. Good faith generally is a prerequisite for indemnification. MCL 450.1562 provides in relevant part:

A corporation has the power to indemnify a person who was or is a party . . . to a threatened, pending, or completed action or suit . . . by reason of the fact that he or she is or was a director, officer, employee, or agent of the corporation . . . against expenses, including attorneys' fees, and amounts paid in settlement actually and reasonably incurred by the person in connection with the action or suit, *if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation or its shareholders*. [MCL 450.1562 (emphasis added).]

In this case, the trial court determined the following:

Michigan law expressly allows corporate directors and officers to seek indemnification for their legal fees from the corporation. MCL 450.1561 *et seq* allows corporations to pay legal fees, including attorneys' fees, judgments, penalties, fines, and amounts paid in settlement, "if the person acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the corporation or its shareholders." Moreover, this provision was also included in the corporation's bylaws and the LLCs operating agreement.

Accordingly, the trial court found:

[Defendant] has acted in good faith and in a manner that he reasonably believed to be in the best interests of the corporation and its shareholders. Accordingly, he is entitled to be indemnified by the company for his attorney fees.

Plaintiff had the burden of showing that defendant did not act in good faith and in a manner reasonably believed to be in the company's best interests, a standard that affords the trial court

significant discretion. See *Franks*, 330 Mich App at 95. The trial court found that defendant acted in good faith by assuming operational and financial responsibilities that preserved the business, made decisions to sustain the business, and continued benefits for all shareholders, including plaintiff, who passively approved decisions and accepted director fees, expenses, and health insurance without contributing capital or labor. In light of these findings, supported by the record, defendant satisfied his statutory and contractual obligation of good faith, and the trial court did not err in this regard. Accordingly, we find that the trial court did not err by ruling that defendant is entitled to be indemnified for his attorney fees.

Affirmed. Defendant, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin

-10-